This is 5-19-0085. In the Interest of Brooklyn H. A minor. And whenever the parties are ready. Whenever you're ready. Take your time. We've got a surplus of time this morning. Thank you. Okay, please court counsel. The main issue. I'm sorry. My name is Alicia Granito and I am representing the appellant Anthony Hawes in this matter. The main issues in this case as I see it are basically notice and then follow through with services and service plans and when those things occur. The case was originally filed on, I'm sorry, August 10th of 2017. My client was served in October of 2017. After that service there was an adjudication on the October 18th of 2017. The reason these dates are significant. I'm going through them. I apologize. I know they're in the briefs but to kind of lay out my argument they're important. So after that adjudication, which was defaulted. My client was incarcerated in the Kansas Department of Corrections. And so was unable to be there was not written and there was no phone conferences or anything set up. So he did not appear at that hearing. After that default adjudication was entered. The notice is set by the courts. In the first few months did not include any Department of Corrections numbers. He received no notices of any further court dates. After a couple of months, then the notices not only didn't include his Kansas Department of Corrections numbers, but he would get the notices. He was completely taken off the notices and they weren't even being sent to him. And this is clear from the record as you go through and you can look at these notices. He's completely removed. He was not represented by counsel. The first time he had counsel appointed to represent him was after the motion to terminate criminal rights was filed in July of 2018. That's significant because at that point in July of 2018, he had never, he wasn't receiving notices. He'd never been given a service plan. And there was one attempt, one, by the Department of Children and Family Services to contact him in regards to sitting up and integrating assessment. To get a service plan put in place. There was one phone call left to the Kansas Department of Corrections with a counselor. No follow-up. And all the permanency hearing reports just say attempts to contact the respondent, Mr. Hawes, for an integrated assessment was unsuccessful. There weren't attempts. There was one attempt and that was admitted in the hearing for Ms. Schwab. In August of 2018, after the motion to terminate was filed, that's when Mr. Hawes was first included on the service plan. There's a service plan that was dated June 6 of 2018. That's when it was started. And Ms. Schwab indicated after she did that service plan, she sent that to him in August of 2017. So the first time my client had any services for him to complete or that he was provided with was in August of 2017. This was after the termination of criminal rights motion had been filed. Claiming that he had failed to complete his services and correct the situation within nine months of the adjudication of this positional. I would argue he never had the opportunity to complete services and he should be afforded that opportunity to complete those services. There were arguments that he abandoned the minor. There was testimony. He sent letters. He made phone calls. He sent cards and he kept in contact with the minor prior to being incarcerated in the Department of Corrections. There have been a pretty lengthy custody battle back and forth where he had hired private counsel. So there was no abandonment of the minor child in this situation. What's his outdate? His outdate is 2020. However, he is on work release. So although he will not be completely paroled until 2020, there are things that he is now able, if he were afforded the opportunity to provide support to the minor child now that he is working. But to follow up with that, because his release date is I believe in May of 2020, even though he's on work release, does that not still prevent the court from returning the custody of the child to him? It would until after he was completely released. Yes. There's case law and I understand what the court is saying. There's cases that state that incarceration alone is not enough to terminate the criminal rights of a parent. Albeit, his incarceration is his own fault. He still should have been afforded the opportunity to complete services in this case. And that is my main point argument is that he just was not ever afforded the opportunity. So then let me ask you this, counsel. I believe this young lady, now maybe 14, 15 years old, somewhere in there, and I believe she's got some developmental disabilities. Is that correct? That's correct. And maybe some physical disabilities. Yes. In fact, I think one of the things you talked about when he was unable to contact her because she had gone through some pretty extensive surgery, was in a rehab facility and things such as that, I believe that's in the record. But my reading of it is that the young lady, not to be too colloquial, didn't mince any words when asked about what she wanted to do about this termination. And without quoting her, I believe to paraphrase is she just really wanted some stability in her life and thought it was for the best that the father's right to be terminated so she could, like you said, have some stability and to move forward. That was a long-winded intro to a question, but, you know, how much deference should the court give to her wishes and desires and her thoughts? Understood. And here's how I would respond to that. From my understanding and what was kind of testified to as well, even by Ms. Schwab, is that Brooklyn liked to please people. She had been in Jordan-Rankin for a very significant period and she did not want to remain there. She wanted to be back in a home environment. So she was telling both sides. She was telling my client and his family that she wanted to return back there. She's telling Department of Children and Family Services. She just wants it terminated so she can have stability. It's my position. This minor was torn between both sides and was going to try to say whatever she believed that side wanted her to state. Anything further? Nothing further. Thank you. Thank you. Stacy. Thank you, Your Honor. Your Honors, counsel, may it please the court, Kelly Stacy appearing on behalf of the state here today. On the hearing for motion to terminate parental rights, the state alleged six different grounds against the respondent in this case. Those included failure to maintain a reasonable degree of interest, concern, responsibility, failed to make reasonable efforts toward the return of the minor, failed to make reasonable progress toward the return of the minor, deserted the minor for more than three months preceding the commencement of proceedings, and he is incarcerated as a result of a criminal conviction. And prior to that, he had little or no contact with the child and his incarceration will prevent him from discharging his parental responsibilities in excess of two years. And finally, the last one was abandoning the minor. And at that hearing to terminate his parental rights, the DCFS child welfare specialists testified, Erin Shaw, and she talked about the services that were identified for the respondent that he needed to complete. Those included substance abuse treatment, parenting education, mental health treatment, psychiatric assessment. The problem in this case is that the child is in Kansas. And it's hard enough to try to make referrals within the state of Illinois in the criminal justice system and have those referrals result in a respondent receiving the services that he needs, let alone in Kansas where Illinois just has no ability to make sure things get done there. And I think that is the same answer regardless of whether the inmate number is put on that information. But it's very clear in the record, DCFS would not allow Ms. Shaw to travel to Kansas to meet with the respondent and to make sure he had all the services that he needed. It's very clear he was unable to provide financial support. And it was not only a failure to provide financial support. He did maintain contact the way he could through cards and letters. But there was a lot more that needed to be done concerning substance abuse. There was no information that he ever started or completed any of those things. And even if this court does not agree with the trial court's determination concerning every one of those grounds, only one ground needs to be alleged and proven in order to affirm the finding of unfitness. And as the Fourth District noted in NRA NH, that's a 2015 case, it is impossible to discharge parental responsibilities while being in prison. The state believes that the finding, the trial court's decision concerning unfitness was not against the manifest weight of the evidence here concerning any of the grounds. The state does agree with the respondent that it did not proceed against the respondent on the ground of depravity. That is an error in the trial court's order, probably a scrivener's error. But that should be amended by striking that finding concerning depravity. And this court has inherent supervisory authority to go ahead and make that correction. The state believes in all other respects the order is proper. Justice Boeing discussed some of the best interest factors that came up and the court did hear evidence concerning those factors. B.H. at the time was 14 years old, diagnosed with cerebral palsy. She did undergo a major surgery where both of her legs were broken. She was hospitalized in a rehab facility for quite some time, had to learn to walk again. But she's doing really well. The surgery was very successful. Her gait is improving and she's doing very well with therapy. The record also indicates B.H. is very interested in social media, like probably most people her age. She loves Katy Perry. She likes to play YouTube videos. But above all, she wants to feel normal. There was some discussion by opposing counsel about pressure from family members. And it looks like different family members did try to step up. But none of those placements seem to be one that worked out very well for B.H. She has remarkable insight. She indicated that she believed her parents do not take care of their children. That's a very tough thing for a child to have to admit to. And she indicated that termination of her father's parental rights was probably for the best. And again, those are not easy things for a child to say, but this clearly is a child who wants to move on with her life and put her future ahead of her. She does have specialized, highly specialized physical needs. She'll continue to need additional therapy. Over the years she has had bouts with anxiety and depression. She's been placed on psychotropic medication in the past. And B.H. indicated that her father keeps promising her and tells her he's going to change, but then he goes back to doing the same things. And she's very disappointed by that. So I'm sorry to interrupt. Because I believe in the record there was talk about the father's significant and long history of mental health issues and substance abuse issues. In fact, I think he's incarcerated for some sort of substance issue. That's what it sounded like to me. I believe the charge involved a marijuana possession, if I'm right on that. But at the conclusion of that best interest hearing, the court found it was in the best interest of B.H. to terminate the respondent's parental rights. I think issues that were raised about notice, it's clear from the record that the respondent was served in October 2017. That was after the case had started. But some of the problem was the issuance of multiple alias summonses to try to locate where this father was. This is a case where neither parent was very involved. And when that happens, it puts a whole lot more pressure on the one who's in prison to be able to try to meet some of the needs. But apart from the request by the state and the respondent to amend the trial court's order concerning the finding of depravity that was really neither alleged nor proven, the state would ask you to amend that by deleting that language and affirm the trial court's order in all other respects. If there are no other questions, that's the state's argument today. Thank you very much. Any time for a vote? I just have a couple of points for clarification. There was testimony by Mr. Hawes that while he was in the Kansas Department of Corrections on his own accord, even though he was not provided with any type of service plan or told that he needed to do any services, he had enrolled himself in mental health, received a mental health evaluation while in there, and had completed some treatment in regards to that mental health evaluation. He'd also sought substance abuse treatment while at the Kansas Department of Corrections, anger management, and a behavior therapy program. So he was working on rehabilitating himself while incarcerated at Kansas Department of Corrections, even though he was not told he had to do these things. And some of these things are the same issues that would have been included in a service plan had he been provided with a service plan prior to the termination of the criminal rights motion. I understand that he was two states away. That is not something that is contested or could be contested. However, in today's society, there are multiple options besides in-person visits to contact people, even people that are incarcerated. I was able, it took a couple of phone calls. I had to send e-mails to get clearance. But I was able to set up phone conferences with the respondent. And the Department of Children and Family Services could have done the same thing had they made those attempts instead of making one phone call and then ceasing efforts at that point. Thank you. Thank you.